IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AZZAH J. GANT**<br>1025 13TH Street SE<br>Apt 13<br>Washington, DC 20003<br><br>*Plaintiff,*<br><br>v.<br><br>**Starbucks Coffee Company**<br>2228 Martin Luther King Jr. Ave, SE<br>Washington, DC 20020<br><br>*Defendant.* | Civil Action No.:<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR EQUITABLE RELIEF AND COMPENSATORY DAMAGES**

COMES NOW, Plaintiff, Azzah J. Gant (hereinafter "Plaintiff" or "Ms. Gant"), by and through her undersigned counsel Andrew O. Clarke, Esq. and A. Clarke Law PLLC files this Complaint against Defendant, Starbucks Coffee Company (hereinafter "Defendant" or "Starbucks") and in support thereof states as follows:

**INTRODUCTION**

1. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.* ("Title VII") for the Defendant's unlawful actions based on religion and sex (Ms. Gant is a practicing Muslim woman) in which she was subjected to harassment, discrimination, and a hostile work environment.

**JURISDICTION AND VENUE**

2. This Honorable Court possesses original jurisdiction over Plaintiff's civil action by operation of 28 U.S.C. §1331, as it asserts a claim that arises under the Constitution, laws

or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964 to redress and enjoin employment practices of the Defendant.

3. Venue is proper pursuant 28 U.S.C. §1391 in District of Columbia because all or a substantial part of the events or omission on which the claims herein are based occurred in the District of Columbia.

## EXHAUSTION OF REMEDIES

4. Plaintiff has exhausted all of her administrative remedies.

5. Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 13, 2022, alleging discrimination based on sex and religion (Ms. Gant is a practicing Muslim and woman), and that she was subjected to harassment, discrimination, and a hostile work environment.

6. On March 24, 2023, Plaintiff received notice through email from the EEOC, informing Plaintiff that a Determination and Notice of Rights had been issued dismissing the Charge, and informing Plaintiff of her right to file a civil action within 90 calendar days of receipt of the Determination and notice of Rights letter.

7. Accordingly, Plaintiff timely files this action in accordance with the EEOC's notice, which provided Plaintiff to file this Complaint within 90 days of receipt of the decision.

## NATURE OF THE ACTION

8. Plaintiff brings this action to secure protection of rights granted under the statute mentioned above, to redress deprivation of rights thereunder, and to obtain such other relief as is necessary to redress the injury to Plaintiff resulting from Defendant's violation of the statute.

9. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, physical and mental pain and suffering, and denial of her statutory rights.

10. This action seeks declaratory and injunctive relief, as well as compensatory and punitive damages, both to secure future protection and to redress the past deprivation of rights guaranteed to named Plaintiff.

**PARTIES**

11. Plaintiff, Ms. Azzah J. Gant, is an adult female who resides in Washington, DC.

12. Defendant, Starbucks Coffee Company is a publicly held corporation, which is headquartered in Seattle, Washington. The Defendant has over 36,000 stores around the world. Approximately, 16,000 of the stores are located in the United States and 91 in the District of Columbia where all or a substantial part of the events or omissions on which the claims herein are based, is a part of the Defendant Corporation, and is located in Washington, D.C.

13. During the relevant period, the Defendant Starbucks employed the Plaintiff Ms. Gant at the 2228 Martin Luther King Jr. Ave, SE Washington, DC 20020 store location.

14. During the relevant period, Plaintiff was Defendant's employee within the meaning and entitled protections of Title VII.

**FACTUAL ALLEGATIONS**

15. Ms. Gant contends that the Defendant discriminated against her based on her sex and religion and subjected her to a hostile work environment, harassment, discrimination, and retaliation.

16. Ms. Gant, is an African American Muslim woman and college student who obtained employment at Defendant, Starbucks Coffee Company in 2021.

17. Ms. Gant's responsibilities at the Defendant's Starbucks Coffee Company location at 2228 Martin Luther King Jr. Ave, SE Washington, D.C. were to assist and prepare handcrafted drinks and prepared foods at the barista bar, as well as, assist and handle payment transactions at the cash register. Ms. Gant also assisted in periodic cleaning up of the store location and opening and closing procedures depending on what shift she was scheduled.

18. Beginning in late 2021 Ms. Gant began to experience a hostile and adverse working environment at the Defendant's Starbucks storefront mentioned above.

19. Ms. Gant experienced harassment by her coworkers, shift supervisor, and store manager.

20. Once Ms. Gant vocalized her issues and concerns to management regarding the discrimination, she was facing the Defendant took minimal to no efforts to ensure Ms. Gant would not continue to suffer the harassment and discrimination that is described in the succeeding paragraphs.

21. On or about December 28, 2021, Plaintiff, Ms. Gant, was working with a fellow coworker, Laquanda Smith ("Laquanda"). At that time the Laquanda slapped Plaintiff on the buttocks. Ms. Gant told her to that what she did was sexual harassment. The Laquanda's response was that she knew it was sexual harassment. Nonetheless, moments later the Laquanda slapped the Plaintiff on her buttocks for a second time. After, the second inappropriate slap to the buttocks Plaintiff moved away from the area where the Laquanda

was standing. However, since the two were working the same shift, Laquanda was able to reengage with the Plaintiff and inappropriately slap on her on the buttocks for a third time.

22. On or about January 18, 2022, Plaintiff and fellow coworker, Laquanda Smith were scheduled to work the same shift. During the shift Laquanda slapped Plaintiff on the buttocks for a fourth time. Plaintiff immediately stated to Laquanda for a second time that what she just did was sexual harassment. Laquanda responded something to the effect of, "Oh I forgot." Plaintiff again moved away from the area this particular coworker was occupying.

23. Later on, or about January 18, 2022, Plaintiff reported the above-mentioned incidents to the shift supervisor, Ciara Smith ("Ms. Smith").

24. Store manager, Tyrone Shumate ("Mr. Shumate") learned of the above-mentioned incidents Plaintiff complained about and decided to conduct a "family meeting" together with Plaintiff, Laquanda, and himself at the end of their work shift.

25. During the "family meeting" with Plaintiff, the coworker, and the manager present, Plaintiff once again felt uncomfortable and embarrassed.

26. The "family meeting" was highly uncomfortable for Plaintiff, especially in the presence of the coworker who committed the sexual harassing acts. Plaintiff recounted each time the coworker slapped Plaintiff on her buttocks. Laquanda admitted to inappropriately touching the Plaintiff and apologized. After, an apology was issued by the Laquanda the store manager, Mr. Shumate took no further action as he believed that a mere apology and recognition of the harassment by the harasser was enough to mitigate the harassment Plaintiff endured. Plaintiff left this "family meeting" feeling helpless in truly resolving the situation.

27. Approximately one-week after the "family meeting" store manager, Mr. Shumate told Plaintiff that he had an issue with her timeliness to the job and threatened Plaintiff with formal repercussions. This threat took Plaintiff by surprise, and left her puzzled, and targeted because the Plaintiff never had an issue with timeliness nor had the Defendant ever mentioned anything in regards to the Plaintiff's timeliness.

28. No issues nor repercussions of Plaintiff's timeliness were ever mentioned prior to the "family meeting", and furthermore no repercussions were ever mentioned in regards to the aforementioned conduct by the Laquanda's inappropriate and harassing touches to Plaintiff's buttocks during or after the "family meeting". Thus, Plaintiff reasonably felt targeted and at the very least surprised that the she was now being threatened with formal repercussions in writing for an alleged timeliness issue that was never mentioned beforehand.

29. During the months of January 2022 – March 2022, Plaintiff had multiple encounters with Laquanda and Ms. Smith that were harassing in nature.

30. Shift supervisor, Ms. Smith, made jokes with Laquanda regarding Plaintiff's harassment claims she made to the store manager in the presence of the Plaintiff. These jokes intimidated the Plaintiff and made her feel helpless in the situation.

31. In an escalation of the harassment, shift supervisor, Ms. Smith began to pull down the Plaintiff's religious face veil. Plaintiff yelled for her shift supervisor to stop. Shift supervisor, Ms. Smith, continuing to make fun of the Plaintiff asked if the pulling of her religious face veil upset the Plaintiff. Plaintiff responded, "YES!"

32. On or about March 3, 2022, shift supervisor, Ms. Smith pulled Plaintiff's religious face veil fully down and off her face. Immediately, after Ms. Smith pulled the Plaintiff's religious face veil off, she laughed in the Plaintiff's face. The Plaintiff was unable to quickly

pull her religious face veil back up and properly place it on her face because both of her hands were full holding various bags and Starbucks drinks. In a traumatized manner the Plaintiff began screaming for the Ms. Smith to pull her religious face veil back up and to properly affix to Plaintiff's face. Ms. Smith did not listen to Plaintiff's requests and just continued to laugh in the Plaintiff's face.

33. On or about March 5, 2022, Ms. Smith pulled Plaintiff's religious face veil down again. During this encounter Ms. Smith pulled Plaintiff's veil down while coworker Laquanda inappropriately touched Plaintiff and stated something to the effect of, "Don't go tell the store manager on me."

34. On or about March 6, 2022, Plaintiff filed a report with Starbucks Ethics indicating all the previous incidents. Plaintiff also reported the above-mentioned incidents to a second shift supervisor named Ryan. Shift supervisor, Ryan advised Plaintiff to report all incidents directly to the District Manager.

35. After Plaintiff reported incidents to Starbucks Ethics, made a second report to a shift supervisor, and reported incidents to the District Manager, Plaintiff was placed on administrative leave.

36. Plaintiff never transferred to a different Starbucks location. Plaintiff no longer works at any of the Defendant's store locations.

37. Defendant adheres to an Anti-Harassment and Discrimination Policy as an equal opportunity employer.

38. Defendant has a zero-tolerance policy which prohibits discrimination and harassment directed at any Starbucks partner, vendor, or customer. Moreover, the policy

strictly prohibits retaliation for making internal complaints of perceived discrimination or harassment.

39. Defendant's internal reporting and investigation process is the following, "A partner who experiences or becomes aware of discrimination, harassment, retaliation, or any company policy violation should report the information, preferably in writing, to any of the following: the store manager, district or regional manager…" The Defendant's internal and reporting investigation process continues that, "All managers have a mandatory reporting obligation under these respectful workplace polies. If a manger receives a complaint about conduct that may involve harassment, discrimination or retaliation that violates policy, oversees such conduct, or otherwise learns of such conduct ***the manager must report that information to Ethics & Compliance***…" *See* Plaintiff's Exhibit 1.

40. Plaintiff's first complaint to a store manager in January 2022. The store manager failed to report Plaintiff's complaints to the Ethics & Compliance as he was mandated to do. Due to the store manager's failure to report Plaintiff's harassment worsened and was prolonged until she was ultimately placed on leave and could not comfortably return to work.

41. Defendant's obligation to report and investigate Plaintiff's complaints began in January. However, it was not until March 2022 after Plaintiff made multiple complaints to various management personnel, and initiated her own report with Starbucks Ethics (which she is not obligated to do) was any investigation process initiated regarding the Plaintiff's complaints.

42. Defendant perpetuated a hostile work environment and acted in retaliation after each time Plaintiff complained of the harassing and discriminating conduct she faced with while working at the Defendant's Starbucks storefront.

## COUNT 1
## VIOLATION OF TITLE VII – RETALIATION

43. Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

44. Title VII of the Civil Rights Act prohibits an employer from retaliating against employees for engaging in activity protected by Title VII, 42 U.S.C. § 2000e-3(a). To that end, an employer may not create or condone a hostile abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64-65 (1986).

45. Here, the Plaintiff Ms. Gant, retaliation for reporting the incidents of sexual assault and harassment to her shift supervisor and store management. Notably, the acts of retaliation include but are not limited to when: (1) Mr. Shumate threatened Plaintiff with formal repercussions for timeliness; (2) Ms. Smith made jokes to the Plaintiff regarding her complaints of sexual harassment; and (3) when Plaintiff was placed on administrative leave.

46. Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful discriminatory employment practices of the Defendant and the Defendant's employees in violation of Title VII.

47. Defendant, including the Plaintiff's coworkers and supervisors knew of Plaintiff's ongoing complaint process within the Defendant's organization and the EEOC.

48. The adverse retaliatory actions to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

49. Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct.

50. Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

51.     Similarly situated employees (no known prior EEOC activity or internal complaints) were not subjected to the same, similar, or any adverse treatment.

52.     Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, which creates a chilling effect in violation of Title VII.

53.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer ant legitimate reason for its unlawful conduct.

54.     The Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

55.     Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

56.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

57.      As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from mental harm, injury, and is entitled to all available legal and equitable remedies.

58.     Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

59.     Plaintiff has incurred medical expenses for her mental harm, and all of the other losses stated with Plaintiff not contributing in a way thereto.

60. The Defendant must comply with Title VII, and by and through their conduct, violated the law.

## COUNT II
## VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT

61. Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

62. When hostile work environment is alleged to have occurred as a result of unlawful discrimination, the Complainant must show that: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee,* 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service,* EEOC Appeal No. 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. at 21 (1993).

63. Here, the five (5) elements of a *prima face* case of a hostile work environment are met. The Plaintiff belongs to a statutorily protected class as an individual who is female and of the Muslim faith. The Plaintiff was subjected to harassment including but not limited to when she was denied any recourse to prevent the sexual harassment and discrimination due to her religion she was facing by her fellow employees and supervisors. Plaintiff was mocked for reporting the sexual and religious harassment to management. Plaintiff was forced to work shifts with the same individuals who conducted the sexual and religious harassment. Management laughed at Plaintiff's complaints of harassment and failed to follow Starbucks

Ethics internal guidelines. This harassment affected several terms and conditions of the Plaintiff's employment, namely where the Plaintiff's mental health deteriorated as a result of the Defendant's conduct. There is basis for imputing liability, where the above-mentioned individuals acting on the Defendant's behalf, subjected the Plaintiff to the above-mentioned harassment.

64. The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment and detrimentally affected Plaintiff.

65. The actions and conduct by the Defendant as set forth herein were severe, hostile, and pervasive.

66. The actions and conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

67. Defendant knew or should have known of the hostile work environment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the hostile work environment.

68. By failing to protect Plaintiff, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

69. Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

70. Plaintiff has incurred medical expenses for her mental harm and all of the other losses stated with Plaintiff not contributing in any way thereto.

71. The Defendant must comply with Title VII, and by and through their conduct, violated the law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Ms. Azzah J. Gant, respectfully prays that this Court grant her the following relief:

a. Enter a declaratory judgment finding that the foregoing actions of Defendant violated Title VII;

b. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

c. Award compensatory damages in the amount of $500,000.00 (five hundred thousand dollars and zero cents) that would fully compensate Plaintiff for the mental injury, humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendant alleged herein.

d. Award the Plaintiff reasonable attorneys' fees and costs incurred n this action; and

e. Order such other relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues so triable herein.

Date: June 22, 2023

Respectfully submitted,

*/s/ Andrew O. Clarke*
Andrew O. Clarke, Esquire
DC BAR NO # 1032649
A. Clarke Law, PLLC
163 Waterfront Street, Suite 440
National Harbor, Maryland 20745
T: (202)780-9144
F: (202)747-5827
E: a.clarke@aclarkelaw.com
*Counsel for Plaintiff*